UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETROIT IT, LLC,

    Plaintiff,

    v.

LSC HOLDINGS, INC.,

    Defendant.
_____/

Case No. 20-cv-12292

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION [#5] AND DISMISSING THIS ACTION WITHOUT PREJUDICE**

### I. INTRODUCTION

On August 25, 2020, Plaintiff Detroit IT, LLC ("Detroit IT") initiated the present action against Defendant LSC Holdings, Inc., d/b/a Lighting Supply and Lighting Supply Co. ("LSC"). ECF No. 1. Plaintiff alleges that Defendant violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e), and breached various contracts in violation of Michigan law. *Id.* Plaintiff seeks damages as well as injunctive and declaratory relief. *Id.*

Presently before the Court is Defendant's Motion to Compel Arbitration and Dismiss this Action. ECF No. 5. This matter is fully briefed. *See* ECF Nos. 6, 7. A hearing on this matter was held on August 3, 2021. For the reasons that follow,

1

the Court will GRANT Defendant's Motion to Compel Arbitration [#5] and dismiss this case without prejudice.

## II. Factual Background

Plaintiff Detroit IT is an information technology business that contracted with Defendant LSC to provide various IT services and equipment to LSC's business. ECF No. 1, PageID.3. The parties entered into a Private Cloud and Managed Services Agreement ("MSA") on August 31, 2017, which broadly states that Plaintiff would provide "certain services . . . and/or products" to Defendant including software, hardware, maintenance, and other technology systems. ECF No. 1-3, PageID.31, 39. A Statement of Work is attached to the MSA and lists the specific services provided to Defendant, including private managed cloud servers, managed firewall services, and email security. *Id.* at PageID.45-46. In its Response to the instant Motion, Plaintiff maintains that the MSA is "the parties' primary contract that governs the parties' business relationship." ECF No. 6, PageID.129.

On February 3, 2018, the parties entered into a Hosted PBX Business Communications Contract ("PBX Contract") "in which Detroit IT contracted to provide LSC with enhanced communication services" that "are not merely telephone services and require use of Detroit IT's servers, systems, and licenses, and are subject to different regulations than typical telephone service." ECF No. 1, PageID.3. The PBX Contract is referred to as "the Contract" throughout Plaintiff's

2

Complaint and is attached as Exhibit 1.  *See* ECF No. 1-2.  Plaintiff specifies that the Hosted PBX Communication technology, licenses, and credentials are all owned by Detroit IT and run on Detroit IT's servers.  ECF No. 1, PageID.4.  Additionally, beyond the MSA and the PBX Contract, LSC signed a Price Quote from Detroit IT for the provision of private cloud hosting services and implementation.  ECF No. 1-4, PageID.56-58.  This Price Quote is governed by the relevant Terms and Conditions "which provide for termination fees in the event the MSA is terminated before its expiration date."  ECF No. 1-5, PageID.60-68.

In August 2020, Defendant sought to cancel all services provided by Plaintiff and terminate the PBX Contract.  ECF No. 1, PageID.5; ECF No. 5, PageID.99.  Detroit IT claims that Defendant subsequently accessed Plaintiff's systems in an unauthorized manner, alleging that "LSC had created additional system administrator accounts without Detroit IT's knowledge or consent[] that allowed LSC to navigate through Detroit IT's systems without authorization from Detroit IT."  ECF No. 6, PageID.130.  Specifically, Plaintiff asserts that "LSC, without authorization, accessed Detroit IT's computers and servers to impair the availability of data located thereon, specifically the data involved in operation of the PBX Communication services provided to LSC."  ECF No. 1, PageID.9.  Defendant maintains that LSC used administrative credentials provided by Detroit IT "to back up certain of its own information for purposes of the migration" from Plaintiff's

3

services, and that its actions were authorized in accordance with the PBX Contract. ECF No. 5, PageID.99.

The parties disagree whether arbitration is appropriate in this case. Two contractual provisions—one from the MSA and one from the PBX Contract—are relevant to this dispute. Paragraph 32 of the MSA first provides that:

> All purchases, including but not limited to software, hardware, professional services, maintenance, travel and expenses shall reference this Agreement and whether or not so referenced, each such purchase by Client shall be governed by the terms and conditions of this Agreement notwithstanding the presence of different or additional provisions on either party's purchase order, invoice or similar document.

ECF No. 1-3, PageID.39. The PBX Contract, executed the following year, has a mandatory arbitration provision that states:

> Any dispute or claim between Customer and Servicer arising out of or relating to the Service or Equipment provided in connection with this Agreement must be resolved by arbitration before a single arbitrator administered by the American Arbitration Association in accordance with its Commercial Arbitration. The arbitration must take place in Dearborn, Michigan and must be conducted in English . . . . All claims must be arbitrated individually and Customer will not bring, or join any class action of any kind in court or in arbitration or seek to consolidate or bring previously consolidated claims in arbitration. CUSTOMER ACKNOWLEDGES THAT THIS ARBITRATION PROVISION CONSTITUTES A WAIVER OF ANY RIGHT TO A JURY TRIAL.

ECF No. 1-2, PageID.26-27.

Plaintiff filed the instant action against LSC on August 25, 2020, bringing claims for a violation of the Computer Fraud and Abuse Act ("CFAA") (Count I); injunctive relief (Count II); declaratory judgment (Count III); and breach of contract

4

under Michigan state law (Count IV). The claims address the purported unlawful access of Detroit IT's systems by LSC, including the PBX Communication services, and seeks the payment of early termination fees.

### III. LEGAL STANDARD

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, ("FAA"), "a written agreement to arbitrate disputes, which arises out of a contract involving transactions in interstate commerce shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). "The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Id*. "When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue." *Id*. "Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration." *Id*. "Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id*.

It is incumbent on this Court to determine as a threshold matter whether an agreement creates a duty for the parties to arbitrate a particular grievance or claim.

*AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649, (1986); s*ee also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 625, (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). This inquiry requires the Court to evaluate, first, whether a valid agreement to arbitrate exists between the parties and, second, whether the specific dispute at issue falls within the substantive scope of that agreement. *Watson Wyatt & Co. v. SBC Holdings, Inc*., 513 F.3d 646, 649 (6th Cir. 2008). In making this inquiry, the Court must turn to state contract law to determine whether the arbitration clause was validly obtained. *Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444, 451 (6th Cir. 2005). Ultimately, it is well-established that any doubts regarding arbitrability must be resolved in favor of arbitration. *Fazio v. Lehman Brothers, Inc.*, 340 F.3d 386, 393 (6th Cir. 2003).

## IV. Discussion

In the present Motion, Defendant argues that Plaintiff's claims are subject to arbitration based on the arbitration provision of the PBX Contract the parties signed in February 2018. Conversely, Plaintiff argues that "the parties' primary contract that began and governed all other aspects of the parties' business relationship and dealings is the MSA, signed on or about August 31, 2017[,]" which does not contain an arbitration clause. ECF No. 6, PageID.132. Plaintiff maintains that the MSA serves as the "umbrella agreement" between the parties and, as the applicable

6

contract, does not require submission to arbitration. *Id.* Thus, Plaintiff maintains that these claims are properly before this Court.

Here, the parties do not dispute that a valid agreement to arbitrate exists between them with the PBX Contract. The disagreement, however, lies in whether the claims in Plaintiff's Complaint fall within the scope of the PBX Contract, or whether the MSA should be principally applicable. *See Watson Wyatt & Co.*, 513 F.3d at 649. The PBX Contract contains the relevant arbitration provision in Paragraph 6.1, which states that "[a]ny dispute or claim between Customer and Servicer arising out of or relating to the Service or Equipment provided in connection with the Agreement must be resolved by arbitration[.]" ECF No. 1-2, PageID.26. Plaintiff maintains in its Response, however, that the parties' agreements and disputes are not limited to the services and equipment provided in the PBX Contract, and that the broader terms of the MSA should govern this matter instead.

During the hearing on this matter, Plaintiff raised the argument that Paragraph 32 of the MSA forecloses all of Defendant's arguments regarding arbitration because it provides that "[a]ll purchases" be governed by the terms and conditions of the MSA, which does not contain an arbitration provision. ECF No. 1-3, PageID.39. In response, LSC maintained that the PBX Contract is a more recent and binding contract separate from the MSA and that, most importantly, Plaintiff's Complaint

cannot be maintained without reference to services and disputes arising out of the PBX Contract specifically.

Upon review of the Complaint, the various contracts at issue, and the case law governing when arbitration is appropriate, the Court agrees with Defendant's arguments here. Plaintiff's Complaint relies heavily on the PBX Contract—which is simply referred to as "the Contract" throughout the Complaint—and emphasizes LSC's purported unlawful access to the Hosted PBX Communication service and phone system. These references are numerous, detailed, and appear to supply the basis for each of Plaintiff's claims. *See, e.g.*, ECF No. 1, PageID.9-14. Specifically, Count I alleges that LSC accessed Detroit IT's "computers and servers to impair the availability of data located thereon, specifically the data involved in operation of the PBX Communication services provided to LSC." *Id.* Plaintiff alleges in Count II that this breach via the PBX Communication services require a remedy in the form of injunctive relief. *Id.* Count III plainly states that "Detroit IT seeks judgment that LSC's use of the PBX Communication services and system was unlawful, [and] constitutes unauthorized access of Detroit IT's data and information[.]" *Id.* Count IV similarly alleges a breach of all of the contracts between the parties.

The claims and arguments in the Complaint, as it is currently written, are predominantly predicated on the services provided under the PBX Contract specifically. The MSA is cited to sparingly, and Plaintiff does not differentiate

8

which services and equipment were provided under the MSA, as opposed to the PBX Contract, that provides the basis for its claims. Thus, while Plaintiff maintains that "references to the Hosted PBX Contract could be removed in the Complaint . . . without changing the substance of Detroit IT's Complaint[,]" the language within the Complaint does not support that assertion. ECF No. 6, PageID.137.

Plaintiff cites to various Sixth Circuit cases in support of its arguments, but none buttress its claim that this case is not arbitrable. In *Dental Assocs., P.C. v. Am. Dental Partners of Michigan, LLC*, 520 F. App'x 349 (6th Cir. 2013), the Sixth Circuit considered three contracts entered into by the parties—two of which contained arbitration provisions—and held that the dispute could be addressed without reliance on the arbitration-dependent contracts. Specifically, the Sixth Circuit noted scant references throughout the plaintiff's complaint to the contracts containing arbitration clauses and determined that "the counts set forth in the complaint are based solely on" the contract that did not require arbitration. *Id.* at 353. Relatedly, the Sixth Circuit in *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498 (6th Cir. 2007), found that the terms of an "umbrella agreement" dictated whether the parties' dispute was subject to an arbitration clause. The Court emphasized that a subsequent contract "was attached to and made a part of" the earlier umbrella agreement, and thus the parties' broader umbrella agreement, and

9

its statement on arbitration, governed whether arbitration was warranted. *Id.* at 505-506.

Here, Plaintiff maintains that the MSA serves as the "umbrella agreement" between Detroit IT and LSC, and that the MSA's lack of an arbitration provision proves that arbitration should not be compelled here. The PBX Contract, according to Plaintiff's arguments, is a secondary contract that is part of, but not critical to, the claims asserted in the Complaint. But that argument does not find purchase in either Sixth Circuit case analogized above; instead, Defendant is correct to assert that it is difficult for Plaintiff to "bring a case for supposed unlawful access to the PBX system without reference to the contract that governed LSC's access to that system." ECF No. 7, PageID.194.

Even though the parties' relationship was initiated by the execution of the MSA in 2017, the PBX Contract and the services provided therein are the focal point of Plaintiff's Complaint. Plaintiff has failed to establish that the MSA is the umbrella agreement governing this dispute solely because it was signed before the PBX Contract. Moreover, Plaintiff did not sufficiently explain which "services and equipment"—beyond the Hosted PBX Communication services—were unlawfully accessed by LSC in violation of the CFAA. ECF No. 6, PageID.135. Without this information, it is difficult to see how the Complaint could be maintained with reference only to the MSA, Price Quote, and those relevant Terms and Conditions.

It is clearly established that "[t]he critical inquiry in determining whether a dispute falls under an arbitration clause is whether the action can be maintained without reference to the agreement containing the arbitration clause." *Dental Assocs., P.C.*, 520 F. App'x at 352 (citing *Fazio*, 340 F.3d at 395). The Court finds that the facts of the instant case demonstrate that this action cannot be maintained without reference to the PBX Contract, which contains the mandatory arbitration provision. Furthermore, while the Court declines to determine whether the MSA may be considered an "umbrella agreement," the Sixth Circuit has clarified that "even in cases involving umbrella agreements, the key question is *still* whether the action can be maintained without reference to the agreement containing the arbitration clause." *Id.* (citing *Nestle Waters,* 505 F.3d at 505) (emphasis added). Because this is not possible under a reading of Detroit IT's present Complaint, this Court will grant LSC's Motion and compel arbitration in accordance with Sixth Circuit precedent.

## V. Conclusion

For the reasons discussed herein, Defendant's Motion to Compel Arbitration [#5] is **GRANTED**. This case is **DISMISSED WITHOUT PREJUDICE**. Plaintiff will be permitted to re-file any claims not predicated on the PBX Contract once arbitration has concluded.

**IT IS SO ORDERED.**

                                              s/Gershwin A. Drain
                                              GERSHWIN A. DRAIN
                                              UNITED STATES DISTRICT JUDGE

Dated:  August 10, 2021

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 10, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager